RCC Ventures LLC v RW Foods, LLC (2024 NY Slip Op 50793(U))

[*1]

RCC Ventures LLC v RW Foods, LLC

2024 NY Slip Op 50793(U)

Decided on June 27, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2024
Supreme Court, New York County

RCC Ventures LLC, Plaintiff,

against
RW Foods, LLC and WHOLESOME GOODNESS, LLC, Defendants.

Index No. 655729/2020

Attorney for Plaintiff:
Benjamin Suess, Esq. of PAYKIN KRIEG & ADAMS, LLP
Attorney for Defendants:
Niraj J. Parekh, Esq. of BARNES & THORNBURG LLP
Charles A. Gallaer, Esq. of ARENTFOX SCHIFF LLP

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 56, 57 were read on this motion to/for DISCOVERY, AMEND.
This action arises from defendants' alleged failure to pay plaintiff finders' fees for procuring financing for a corporate acquisition. In motion sequence number 001, plaintiff moves pursuant to CPLR 3124 to compel certain disclosure and pursuant to CPLR 3025 to amend the complaint. For the reasons set forth herein, the motion is granted in part.
I. BACKGROUND
The following facts are taken from plaintiff's complaint and are taken as true for the [*2]purposes of this motion.
In January 2018, defendant Wholesome Goodness, LLC (Wholesome), a Delaware company in the business of selling health foods, reached out to plaintiff RCC Ventures LLC (RCC) to request its services in raising financing for Wholesome's proposed acquisition of a food brand called Riceworks. In March 2018, Wholesome created a separate Delaware company named RW Foods, LLC (RW Foods) and requested that plaintiff put any borrowed funds into RW Foods for the purpose of acquiring Riceworks. On March 17, 2018, RCC entered into a written agreement (Agreement) with RW Foods to raise funds for the benefit of Wholesome, providing that plaintiff would introduce RW Foods to lenders, and RW Foods would pay an introduction/success fee to plaintiff if RW Foods accepted financing from the introduced lender. The Agreement expressly provided that the "Use of Funds" of the loan was for "Wholesome Goodness, LLC" to use in the acquisition of the business assets of Riceworks as well as for "general corporate purposes" of Wholesome. In addition, the Agreement contained non-circumvention language providing that RW Foods "shall not take actions that are designed to circumvent or eliminate the role of RCC."
Upon the successful consummation of a lending transaction for RW Foods, RCC was to receive a "Success Fee" equal to 3.5% of the aggregate amount of the loan, payable out of the loan proceeds at closing, and, if there were any incremental and further loan amounts, the same 3.5% Success Fee would apply to those amounts. In addition, the Agreement entitled RCC to a "Warrant" to acquire 2.5% of RW Foods for the total exercise price of $10, exercisable for a term of ten years. Further, this "Option Rights" provision included anti-dilution language, granting RCC an option to purchase a 2.5% ownership interest in the combined business of both Wholesome and Riceworks.
At some point, RCC introduced Wholesome and RW Foods to a lender called Bibby Financial Services (BFS). Later, on January 16, 2019, BFS signed a $1.5 million credit facility with Wholesome directly, extending to Wholesome a revolving line of credit to fund its operation. Pursuant to this financing facility, Wholesome has allegedly drawn down on its line of credit for a total of over $5 million over time.
In or about April 2019, Wholesome acquired Riceworks. Plaintiff is unsure whether Wholesome used RW Foods to acquire Riceworks.
Despite demand letters, Wholesome has refused to issue to plaintiff the Success Fee or to permit plaintiff to exercise its option.
Plaintiff commenced this action on October 27, 2020, bringing eight causes of action, including breach of contract against RW Foods and promissory estoppel, quantum meruit, tortious interference against Wholesome. In addition, plaintiff asserts a claim for attorneys' fees against both defendants and seeks to impose alter ego liability upon Wholesome for the actions of RW Foods.
In this motion, plaintiff seeks (1) to compel defendants to respond to certain requests in its First Request for the Production of Documents relating to alter ego liability between defendants; (2) to compel defendant RW Foods to answer certain of plaintiff's First Set of Interrogatories; (3) to compel defendants to produce Jeff Posner, allegedly the CEO of Wholesome and RW Foods during the events in question, for deposition; and (4) to compel RW Foods to provide a privilege log. In addition, plaintiff seeks leave to file an amended complaint adding additional allegations to the eighth cause of action asserting alter ego liability regarding Posner, as well as Peter S. Gordon and Rich Letizia, who are allegedly officers and shareholders [*3]of Wholesome and RW Foods. Defendants oppose the motion.

II. DISCUSSION
1. To compel document production
First, plaintiff seeks to compel defendants to produce documents responsive to plaintiff's First Request for the Production of Documents (First Request) relating to alter ego liability.
CPLR 3101(a) entitles parties to "full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." What is "material and necessary" is left to the sound discretion of the lower courts and requires disclosure of "any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]).
The question, therefore, is whether the documents plaintiff requests are "material and necessary" to the prosecution of its claim for alter ego liability as against Wholesome. Under Delaware law, although normally "[t]he legal entity of a corporation will not be disturbed," the corporate veil may be pierced "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation require it, are involved" (Harco Natl. Ins. Co. v Green Farms, Inc., 1989 Del Ch LEXIS 114, *10-11 [1989]). When determining whether a company is merely the alter ego of a principal such that the veil should be pierced, Delaware courts examine factors related to "how the corporation operates and the particular defendant's relationship to that operation," including "whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder" (id. at *11-12).
Here, in its First Request, plaintiff requests documents "material and necessary" for it to determine whether RW Foods is merely an alter ego for Wholesome (see CPLR 3101 [a]). For instance, at Request No. 13, it demands "[d]ocuments sufficient to identify the identity and address of each person or entity who has owned any interest in Defendants," which could reveal "how the corporation operates," whether the "officers and directors functioned properly," and who is the "dominant shareholder" (see Harco Natl. Ins. Co.). At Request Nos. 15, 16, and 17, plaintiff asks for bank account information, monthly bank statements, and documents sufficient to identify defendants' annual gross income, which could bear on "adequate capitalization" (see id.).
In response, defendants object to nearly all of plaintiff's requests (see affirmation of plaintiff's counsel, exhibits R, S). As an example, in response to plaintiff's request number 13, for "Documents sufficient to identify all affiliates, subsidiaries, co-venturers, joint enterprises, or otherwise of Defendants," defendants object on the basis that the request is vague and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence, arguing that the identity of affiliates of other entities of RW Foods is "irrelevant to any claim or defense in this action" (affirmation of plaintiff's counsel, exhibit S).
In opposition to this motion, defendants argue that plaintiffs have failed to particularize which demands it is propounding here. The court refers defendants to the affirmation of [*4]plaintiff's counsel, which specifically describes the requests to which defendants have failed to adequately respond: Requests Nos. 6-9, 11-16, and 19-52.
In addition, the court notes that, as defendants point out, plaintiff has asserted alter ego liability as a separate cause of action. New York courts have squarely held that "[a]n attempt by a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation" (Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]; see Robinson v Day, 103 AD3d 584, 588 [1st Dept 2013]). However, the Court of Appeals has also made clear that plaintiffs may assert the theory with "facts and circumstances which will persuade the court to impose the corporate obligation on its owners" (Morris). Thus, the eighth so-called "cause of action" can be taken as merely a further set of pleadings that support a theory of alter ego liability as against Wholesome for the first cause of action for breach of contract as against RW Foods.
Therefore, discovery is permissible to determine the appropriateness of alter ego liability for the breach of contract claim. This is not a situation where the plaintiff has failed to allege facts to justify discovery regarding piercing the corporate veil, as in, for example, Art Capital Bermuda Ltd. v Bank of N.T. Butterfield & Son Ltd., 169 AD3d 426 (1st Dept 2019).
2. To compel interrogatory response (RW Foods)
Second, plaintiff seeks to compel defendant RW Foods to respond to plaintiff's interrogatories, specifically numbers 5, 6, and 7 (see affirmation of plaintiff's counsel ¶ 69, 70).
Interrogatory number 5 asks RW Foods to identify, "[f]or all periods from January 2017 to the present . . . all members of Defendants" (see affirmation of plaintiff's counsel, exhibit T). RW Foods objects on the basis of irrelevance (see id.). Interrogatory numbers 6 and 7 ask RW Foods to identify, "[f]or all periods from January 2017 to the present . . . all persons who engaged in any communications with BFS on Defendants' behalf" and "all persons with knowledge of Defendants' introduction to BFS" (id.). RW Foods responds by stating that it interprets the queries to refer to individuals who communicated with BFS regarding the Bibby Financing Facility, and accordingly responds "none." (id.).
As to interrogatory numbers 6 and 7, "none" constitutes an adequate response, and plaintiff's request to this extent is denied.
As to interrogatory number 5, plaintiff is entitled to a response, as the identity of the members of RW Foods will be "material and necessary" (CPLR 3101 [a]) to determine the facts necessary to propound plaintiff's theory of alter ego liability, and the request is reasonable (see Allen).
3. To compel production of Jeff Posner for deposition
Third, plaintiff seeks to compel Wholesome to produce for deposition Jeff Posner, allegedly the CEO of Wholesome and RW Foods during the events in question.
CPLR 3106 (b) provides that, "[w]here the person to be examined is not a party or person who at the time of taking the deposition is an officer, director, member or employee of a party, he shall be served with a subpoena." A party is "not obligated to produce a witness who is not under its control" (Ewadi v City of NY, 66 AD3d 583, 583 [1st Dept 2009]); and it is the plaintiff's burden to show such control (see New GPC Inc. v Kaieteur Newspaper Inc., 124 AD3d 437 [1st Dept 2015]).
Here, on July 8, 2022, RCC noticed Posner for a deposition (see affirmation of plaintiff's [*5]counsel, exhibit U). By email dated July 28, 2022, Wholesome responded that, because "Jeff Posner is no longer with the company," he would "have to be subpoenaed as a third-party" (affirmation of plaintiff's counsel, exhibit V).
Here, plaintiff fails to submit any evidence to demonstrate that defendants have control over Posner or that he is currently an "officer, director, member or employee" of defendants (CPLR 3106 [b]). Indeed, plaintiff appears uncertain, observing that "Posner was — and may still remain — a member of both Wholesome and [RW Foods]" and that he should be produced "to the extent [he] is involved in either or both Wholesome and [RW Foods]" (affirmation of plaintiff's counsel ¶ 74). Plaintiff fails to demonstrate its entitlement to this relief, and this request is denied.
4. To compel production of privilege log (RW Foods)
Fourth, plaintiff demands that RW Foods produce a privilege log as to the seven emails it produced with extensive redactions, allegedly in violation of Rule 11-b of the Rules of the Commercial Division of the Supreme Court (22 NYCRR § 202.70 [g]) (see affirmation of plaintiff's counsel, exhibit W).
Consistent with CPLR 3122 (b), Rule 11-b of the Commercial Division provides that "[p]arties shall meet and confer at the outset of the case, and from time to time thereafter, to discuss the scope of the privilege review, the amount of information to be set out in the privilege log, the use of categories to reduce document-by-document logging, whether any categories of information may be excluded from the logging requirement, and any other issues pertinent to privilege review . . . ."
Here, counsel for RW Foods affirms that, on September 14, 2022, RW Foods served a copy of its privilege log on all counsel of record via-email, thus mooting this branch of the motion (see affirmation of counsel for RW Foods ¶ 8). However, counsel for RW Foods submits no contemporaneously prepared proof of said service.
Thus, the parties are ordered to comply with the Rules of the Commercial Division by meeting and conferring with one another regarding the "scope of the privilege review, the amount of information to be set out in the privilege log, the use of categories to reduce document-by-document logging, whether any categories of information may be excluded from the logging requirement, and any other issues pertinent to privilege review . . . ." (see 22 NYCRR 202.70 [g] rule 11-b). Following the meet and confer, RW Foods is directed to file proof of its service of the privilege log on the parties in this action within 30 days of the date of this order.
5. To Amend
In addition, plaintiff seeks leave to amend the complaint to add as additional defendants individuals Peter S. Gordon, Rich Letizia, and Jeff Posner, allegedly officers and shareholders of RW Foods and Wholesome.
Pursuant to CPLR 3025, a party may amend a pleading "at any time by leave of court" (CPLR 3025 [b]). "While it is true that on a motion for leave to amend [a pleading] the movants need not establish the merit of [their] proposed new allegations, they must show that the proffered amendment is not palpably insufficient or clearly devoid of merit" (Sahmanovic v Kingsbridge Realty Assoc., LLC, 197 AD3d 1077, 1077 [1st Dept 2021]). Otherwise, leave to amend "should be freely granted, absent prejudice or surprise resulting therefrom" (MBIA Ins. [*6]Corp. v. Greystone & Co., Inc., 74 AD3d 499, 499 [1st Dept 2010]).
Here, plaintiff seeks to add additional facts to the complaint regarding the role that Peter S. Gordon, Rich Letizia, and Jeff Posner played during the transactions at issue in this case, specifically alleging that the companies are alter egos of the individuals. Plaintiff seeks to amend the eighth cause of action for alter ego liability to include additional allegations to support alter ego liability.
As observed above, alter ego liability is not a separate cause of action under New York law (see Morris v New York State Dept. of Taxation & Fin.). Therefore, to the extent that defendants seek to amend the complaint to further augment the eighth cause of action, such an amendment would be improper, as it would only compound the erroneous pleading. Accordingly, plaintiff's request to amend the complaint is denied without prejudice.
Accordingly, it is hereby
ORDERED that plaintiff's motion is granted in part, to the limited extent as follows:
1. Defendants are ordered to produce documents responsive to Requests Nos. 6-9, 11-16, and 19-52 of plaintiff's First Request for the Production of Documents;
2. RW Foods is ordered to provide information responsive to plaintiff's Interrogatory No. 5; and
3. The parties are ordered to meet and confer in compliance with Rule 11-b of the Rules of the Commercial Division of the Supreme Court (22 NYCRR § 202.70), and RW Foods is directed to file with the court proof of service of its privilege log upon the parties in this action within 30 days of the date of this order; and it is further
ORDERED that plaintiff's request to amend the complaint is denied without prejudice; and it is further
ORDERED that the motion is, in all other respects, denied.
June 27, 2024
ROBERT R. REED, J.S.C.